All right. Good morning, ladies and gentlemen. Our first case for this morning is Freedom From Religion Foundation v. Concord Community Schools. Mr. Rose. Thank you, Your Honor, and may it please the Court. For nearly half a century, the Christmas Spectacular, staged by Concord High School each winter, has concluded with a 20-minute performance dedicated to the religious aspects of Christmas. Prior to this litigation, that performance included a faculty member reading the story of Christmas as it appears in the New Testament, as well as a quote-unquote living nativity, where students stood still to represent the various figures in that story. The school does not attempt to defend this version of its Spectacular, nor could it, and its defense of the current version does not fare any better. Even with the singular songs devoted to the other winter holidays, and with the substitution of mannequins for students when the nativity is unveiled, this performance still violates the coercion test, the endorsement test, and Lemon's first prong. The district court's conclusion to the contrary should be reversed. There was, however, no other error in the district court's decisions, and the declaratory relief and nominal damages awards should be affirmed. No matter what constitutional lens we view the Christmas performance through, the scope of this performance, as well as its sheer religiosity, is startling. Are we focusing only on the second half, or do you think we should look at the entire performance? Judge, that's a difficult question to answer. Certainly under endorsement analysis, at least, I think it is permissible to take a macro view of the performance. But the question really is, does what came before the Christmas performance somehow dull the religious overtones, the religious message being conveyed through that performance? In other words, I hope we're both talking about the same thing. I gather the first half of the performance is called Magic of the Season, and you're not making any complaint about that. No, we are not, Your Honor. And the second half, after the intermission, is called something like Spirit of the Season, and that is what you have focused on. So I'm wondering whether we look at this as a 90-minute show or whether we look at it as just the second half. How do we evaluate it? I think the school has definitely attempted to do something unique with the second half or different with the second half that makes it very difficult for them to say that what they put on during the first hour of the show somehow takes away from the religious message, is somehow part of the same message in the way that the other displays at issue in Lynch were part of the same message at the same time. I think it is difficult to say that the first hour is going to dull the religious impact in that manner. And the religious impact, as I say, is startling. The differences between this version of the Christmas Spectacular and the version that they have staged under the title The Story of Christmas for decades are cosmetic at best. Even though a member of the faculty no longer reads directly from the New Testament, for 24 minutes now the school is still relying on student performers to celebrate the story of the birth of Christ. And this performance still stands head and shoulders above anything else on the evening. It is the only performance consisting of multiple songs. It is the only performance staged by multiple groups. And it is the only performance that has been staged in substantially identical form for the past hour. Counsel, I'm not sure what your position is. Is it your position that the First Amendment bars any presentation of a nativity scene, period? No, of course not, Your Honor. Then what worries me is if it's not a position that a nativity scene is just forbidden, it sounds like you're asking us to edit the details of a play. And I find it very hard to see how the First Amendment gives the judiciary the position of a Roman censor to pick and choose. I can understand an argument for all. I can understand an argument for none. But I have a lot of trouble with an argument for being a censor. Your Honor, obviously the First Amendment, the Establishment Clause, has gray areas in the middle where if they put forward a nativity as part of a truly educational performance that acknowledged the religious traditions underlying the winter holidays, but was nonetheless done in a secular fashion, I think that that's something that- Yeah, but you see my trouble. You're asking me to be a censor to say, well, here's what they can include, here's what they can't. Much as I admire Cato the Elder, I'm not sure that that's what an Article III judge is supposed to do. What we are asking, Judge, is for the court to invalidate the Christmas performance as is. Whatever the school decides to do next is entirely up to the school. In the same way that the plaintiffs in Allegheny County were saying you have to invalidate this display, and we might have a different case if they came back and suddenly that display was more akin to the display at issue in Lynch. Is there anything that you would regard as constitutionally acceptable short of equal time for Hanukkah, Kwanzaa, and Christmas? I think it is- I mean, I realize it's not equal time right now, but I want to know whether that's the only acceptable solution. I think if you look at the Hanukkah performance, the performance of Anima Amin, and you view that performance and what you see is a brief factual-based narrative followed by a performance of students standing center stage with images associated with the holiday on video screens. I think you can look at that performance and say that the school knows how to put forth an educational performance that provides information about these holidays, that acknowledges these holidays without celebrating them. And I think that if the school had chosen to do the same thing with Christmas, if they had had a choir standing center stage performing Silent Night or Hark the Herald Angels Sing with imagery similar to what you see in the performance of Anima Amin, I don't think we would be here today. And that's so even if the performance was two minutes longer or two minutes shorter. I don't think the establishment clause can be reduced to this mathematical formula whereby you have to have five minutes for each religion. The question that this court has to ask is essentially, is the school acknowledging these religions and the religious tradition, these holidays and the religious tradition that gave birth to them, or is the school endorsing the message? Is the school celebrating the message? And we think with the performance as is that the answer is quite clearly that the school is celebrating this religious message. Now, of course, the district court disagreed with you, and I want to divert you for a moment to a different topic since 20 minutes can fly by. And that is, I would appreciate it if you would address, I know now you have to put on your hat as appellee, address the argument that your opponents have made that the changes in Version 3, I'll call it Version 3. There was the first, the 2014, there was the proposed 2015, there was the actual 2015. So I'm calling the actual Version 3. District court finds that Version 3 is acceptable under the establishment clause. We fully understand that you contest that, but suppose for the moment it is. Your opponents say there's no longer a controversy between you and they that this somehow, because they've in various ways indicated that they will acquiesce to that, and you have argued that this doesn't meet voluntary secession. So I'd like you to talk about that for a minute. Of course, Your Honor. And obviously the school has a heavy burden to carry to demonstrate that it will not revert to past performances. What the school has come forward with is an affidavit from its superintendent saying after the 2015 performance, I had, I don't mean to be overly casual, but I had literal water cooler conversations. I think he said that actually. And people seem to enjoy the performance, and so we have no intention of going back. I think that the issue in that, I think that the question of whether that is sufficient to demonstrate that they won't revert, I think this case is indistinguishable from Elmbrook or perhaps in Elmbrook where the principal actually, where the superintendent said not only are we not going to go back and again conduct graduation ceremonies in a church, but in fact I will veto the decision of any individual school to do so. The fact of the matter is that the school speaks through its school board. It has the power to enact a formal policy change. Are there other such formal policies that they have? Not that I'm aware of and certainly not with respect to its Christmas performance. The fact of the matter is that. No, but the school must have policies. The board, there's a whole code that lets them do that. I'm positive they do, but I don't think that the superintendent can rely on conversations with individual board members. Oh, right. No, I understand. You're drawing a distinction between an official resolution, let's say, passed by the school board versus the superintendent's personal intention. And certainly I'm positive that if you visit their website, they have all kinds of policies. But the fact of the matter is that without the district court's declaratory judgment, the school, in the words of W.T. Grant, would be free to revert to its old ways. In Trinity Lutheran, there was a gubernatorial announcement of a formal policy change, and that was not sufficient. And we think that the school falls far short of meeting what it has to meet in this case as well. Now, what's at stake with this? I mean, part of the argument has been whether there's mootness. There's another aspect of it about the nominal damages issue. Is what lies behind all this attorney's fees, or is this something more permanent? I think what lies behind this is what we believe to be an unconstitutional performance that the school has demonstrated over half a century, that it wants to be able to perform and that has affected the plaintiffs, that has made their high school experience less than enjoyable, to say the least. So your position must be then, even if contrary to what you're arguing, we thought Version 3 squeaked by constitutional muster or flew by constitutional muster, however it did, that without the declaratory judgment nailing down the distinction between one and two on the one side and three on the other side, you have not received the relief to which you're entitled. In other words, you think the declaratory judgment is important to hold the school district's feet to the fire, basically. Absolutely, Your Honor. If there are no further questions. I do have one further question. A difficulty I have with your case is that it conflates, your claim conflates what is essentially performance art. It's a musical performance with worship, essentially saying that the two are indistinguishable here, that the second half of this Christmas spectacular was pervasively religious because it dealt with religious music or the musical selections were explicitly religious and it included two minutes of a static nativity scene to visually illustrate one of the musical performances. And that position seems to foreclose any kind of performance art that has a religious basis. And there are a lot of, there's a lot of music, there's a lot of art, there's a lot that is pervasively religious and that seems to foreclose, that argument forecloses that in a high school setting or equates it with a form of worship or prayer and that it falls on that side of the line and therefore impermissible under the Establishment Clause. I don't think it does foreclose that, Your Honor. As I say, I don't think that there would be an issue if one of the musical groups decided to perform Silent Night. What about Jesus Christ Superstar as the school musical? I think that that would probably be okay. I think that that's the type of thing that has taken on a secular place in society. Because it's a rock musical rather than Christmas carols? Because it is, I even think that Christmas carols can take on a secular place in society such that when they're performed, the overarching message is that- What about a concert of liturgical music? Judge, again- Done by the magical choir. Again, I fully- Routine in many high schools. I fully acknowledge that there is a significant gray area here. And where I draw the line, I'm positive this is different from where the school draws the line. Both of us very well may draw the line in a different place than the court. But the fact of the matter is that what we have here is a 24-minute telling of the story of the birth of Jesus that culminates with a completely dark auditorium where the only visual element is an illuminated life-size nativity scene while high school students perform religious hymns. And whatever it means to present religious music in a secular fashion, that simply is not this. This is the type of performance that can create, will create, at least the same type of quote-unquote subtle coercive pressure that was at issue in Elmbrook. So we do believe that this runs afoul of the First Amendment. Thank you. All right, we will probably hear from you again. Mr. Overholt. Good morning. Good morning. I first want to address your question, Judge Wood, about whether the court should consider the 90-minute program as a whole or focus just on the last part. And I think the answer, based upon a variety of Supreme Court cases, is that it must look at the program as a whole. If there is one thing that seems we can all glean from cases like Lynch and Allegheny, it's that context matters. And here we have a 90-minute program, two-thirds of which is composed entirely of what I'll call secular songs, songs that talk about Santa or jingle bells or text me a Merry Christmas. Then we have the break, and then we have a 30-minute presentation that focuses more on what I would call traditional holiday music. It contains a song addressing Hanukkah with the corresponding video display. Similarly with Kwanzaa, we have a Kwanzaa song and a video display. Are those necessary to the constitutionality of this performance? I'm not sure what you mean by whether they're necessary or not. Remove the Kwanzaa song and the Hanukkah song. Is the performance constitutional? I don't know that they're necessary. It's just window dressing. I don't think so. For Lynch purposes. I disagree. If you look at the actual performances, in addition to having the two songs and the video display, you also have a narrative reading that precedes each of the performances. And as this court talked about in cases such as books, those kinds of readings that help give context to the display or the performance matter. So no, I wouldn't say it's window dressing at all. I think that is important. The production is called Christmas Spectacular. Yes, it is. It's a Christmas concert. It's not a Kwanzaa concert. It's not a Hanukkah concert. It's a Christmas concert. And you've added the two songs to try to inoculate the district from an establishment clause challenge. It is more than that. They wouldn't be there otherwise. No, I think it's more than that. This Christmas program, as you describe it, and that is what it's called, includes, again, much secular music, and it includes songs from other faith traditions. And I think that matters. And I don't think simply calling them window dressing is fair. Again, they are trying to provide not only a performance that the audience would enjoy, but they are also trying to present education to the students. That's why these programs include a wide variety of aspects, including dance, choreography, stagecraft. They include all these things. It is more than simply a Christmas concert. It's a performance opportunity for the students in the performance arts program, the co-curricular program, the bands, the orchestras, the choirs, the show choir, the dance choir. Yes. So that's the educational purpose, not to provide content about the winter holidays. Content about religion, maybe. It is not the purpose to provide a program with religious content, but it's also true. I mean, it's inescapable that part of the winter holidays includes this type of music. As the court said in Flory, and as you indicated when you asked the question about liturgical music, this type of music is part of the holiday season. And to perform it is simply not an endorsement of religion. If it were, this music just couldn't be performed at all in schools, and I don't think that's what the law says. Well, right, and that gets to the heart of the question that I asked your opposing counsel about whether the claim here conflates performance art, putting on a play, putting on a show, putting on a concert with worship. Obviously, public worship in a high school is forbidden under the Establishment Clause. Those are the prayer cases. And whether this case falls on that side of the line or not is the core question in this case. And performance art stands in a different domain, it seems to me, than does prayer and other forms of worship, or at least when it's conducted as a part of a long tradition of periodic concerts throughout the school year, corresponding to whatever is happening at that time of year in the ordinary course of the life of the school. I think that's correct. In fact, you can even, if you choose, go beyond just this program. But I want to go beyond it in a different way, perhaps, than you were thinking of, maybe not. If we're going to look at context, isn't it appropriate to look at the 45-year history of the program before the 2015 changes in which readings from the Bible, a much more active religious component existed in the program? Surely, when a whole group of people are sitting there in a collective space and somebody is reading from the Bible and things from the Christmas section of the hymnal are being sung, it looks a lot like a church service. It looks a lot like worship as opposed to watching Jesus Christ Superstar, which I will observe is relatively agnostic about the divinity of Christ. I think you're right. I think the court should consider the historical background of this performance. Wouldn't that make us then, at least, wouldn't that weigh on the religious side of the balance? No, because as the district court determined, when you see the historical performance and compare it to the performance as it was approved for 2015, there are very significant changes, and that historical perspective is helpful for the reasonable observer to understand how the school has moved away from any type of religious endorsement. Actually, I think it enforces the school's position that the performance in 2015 was not an endorsement because of the many changes made to the program. And one of the things that opposing counsel did, both in the briefing and a little bit here today, is really try to minimize what those changes were. But as the district court said when the plaintiffs tried to do that below, the plaintiffs were simply wrong. Why is the nativity scene with mannequins different from one with students standing still? According to the district court, that was important because having live student performers created more of an endorsement. The district court found that having... Does that strike you as sensible, though? I mean, I know the district judge said that, but I'm trying to understand it. The part the district court seemed to focus on, in part, was how by having the live student performers, you actually had them move across the stage, in essence creating a reenactment of how the three wise men trekked across and trekked to Bethlehem. My belief is that that is, just based on the opinion, that that is what tipped the balance for the district court. Now, this court could reach a different conclusion about that, I suppose, but that was the issue that I see from reading the opinion that caused the district court concern. So do I understand you to say that the time is also an important thing? I guess in the earlier version, version one, the nativity scene was on the stage for quite some time, 12, 13 minutes or so, and now it's just two minutes. Is that right? Yes. Again, we were trying to address the concerns of the district court, which saw the nativity scene as being more of a focal point by being on the stage for a longer period of time. So to address that, the school greatly limited the audience exposure to the nativity scene, making it equal to the amount of time for the visual displays for the other two religious performances, both Hanukkah and Kwanzaa. Now, under the endorsement test, it's important to consider whether somebody who's not of the majority religious group, perhaps a Mormon, perhaps somebody of the Islamic faith, perhaps somebody else, would feel excluded. We talked a little bit about this in Elmhurst. The Supreme Court, particularly Justice O'Connor, is associated with this idea. And so one of the ways of asking this is, I suppose, if we get over the question that Judge Sykes has raised, whether this would be perceived anyway as more on the worship side of the line than on the, gee, there are all these songs that you can't even avoid if you go to a shopping mall during December, because they're constantly being played at you. But if you're on the worship side of the line, would somebody from another tradition continue to feel welcome in the school? And again, I think the program viewed as a whole would not create that feeling to a reasonable observer, that because two-thirds of the program is entirely nonreligious music and we have now three faith traditions represented in the remaining one-third of the program. Plus, remember, the performing arts program is more than simply the Christmas program. Oh, sure, there are lots of things during the year, right? That's right. I mean, it sounds like a wonderful program, actually. And this is a big focus of Concord High School. Unlike many schools in Indiana, they don't focus on athletics. They focus on the performing arts. And this is only one program out of five or six they do each year. So I think, given those changes and given the fact that a reasonable observer must be informed of how the program has changed, that a reasonable observer would see this as not being an endorsement. So what about documentation of the policy change? You spend a lot of time in your brief arguing that you should be able to take advantage of the voluntary cessation doctrine, but it all seems very dependent on the identity of the present superintendent. And if you're a superintendent, someday you'll have another superintendent who may take a different view. And it's not nailed down in school policy without the declaratory judgment. It is certainly true there is not a written school policy from the school board. I don't disagree with that at all. And doesn't even the most recent guidance from the Supreme Court tell us that we need something very clear if we're going to invoke voluntary cessation? In laid law, that is certainly something the court said. Well, and even in the Trinity Lutheran case, although I know that's a free exercise case, but the issue was the same question. But it's also true that this court, in cases such as Schober, said that when we're dealing with public officials, whether it's school officials or officials of a city or town, it places greater stock in their acts of self-correction so long as they appear genuine. Well, but I'm just saying, footnote one, you've probably read it, in Trinity Lutheran just this year, you have the governor, he's a state official, right? And the court says it's not good enough. The court says there's still a case before it. The other thing I would say about it. I mean, it rules in favor of the church on the free exercise claim, but that's quite different from saying it's moot. And the other thing I would do, though, is point to the other piece of evidence that my opponent did not point to. When asked this question by this panel about mootness, he referred only to the statement of the superintendent. What he did not refer to was the statement in the deposition of the music director. Right. No, we know that both of them said that, but why is the music director any more binding on the school district than the superintendent? I think when you put them both together and you look at the practical reality of what would happen if the school changed its position and went back to some other program, I mean, it knows what would happen. It'd get sued again. The school has no interest in that. But that's expensive for everybody. Why does the school mind the declaratory judgment then? All it's saying is, I mean, it wasn't even an injunction. It was a very carefully and sensitively crafted solution to the problem. The court assumes the school district is going to comply with the declaration. There is the possibility of a backup injunction, but that's a whole new proceeding, too. And because of that, I mean, again, the school has no interest in that. The community wants the live nativity back. Does it not? I mean, I know that's unscientific, but. Yeah, I can't say that. Really, the Facebook page, even the death threat to one person, and I'm going to enjoy watching you die, I mean, it's. . . There were certainly some strong feelings conveyed. I agree with that, and that material is in the record. But you can't draw from that that there is a solid consensus of public opinion for or against it. I mean, this poll was just some poll done by a newspaper with no scientific validity whatsoever. The standing ovation for the nativity at the 2015 performance exceeded that of any of the numbers in the show. It is certainly true that of the people who attended that performance, those people stood and applauded. But I can't say with any certainty. Sustained applause and cheers. That's true. But remember. . . Almost drowning out O Holy Night. The question, though, is what does the community think? And I don't believe this court, nor should the district court, draw any type of empirical conclusion of the community as a whole based simply on what the people in that audience said. Right. We just have to decide the question about whether the superintendent's position on keeping the status quo as it is is enough for the voluntary cessation doctrine and whether that's considered binding enough. I understand. The district court thought not in light of the totality of the evidence about the community's wishes and the sort of vague nature of the assurances that the superintendent was giving in his affidavit. And again, I would focus not just on the superintendent's statement, but also the music director who said, I'm the boss, this is my decision, and it's not going to change. I mean, that's what he said under oath. And the plaintiffs never challenged that other than to say, well, they should have done more. They should have had a formal proclamation. Well, typically, can you think of a case in the voluntary cessation line of cases where something this informal has sufficed? Because I actually can't. There are the cases that are cited in the briefs, but that is the best that there is, I think. Oh, okay. I would acknowledge that. All right. Unless the court has other questions, that's all I have. Thank you. I see none, so thank you very much. Anything further, Mr. Rose? Very briefly, Your Honor. I think it's important that the constitutional issue in this case not be lost in legal technicality. After all, at its base, what the Establishment Clause asks is, what will an observer think when they view this religious performance? Will they think that this is a school endorsing celebrating religion, or will they think that this is a school simply educating students in a secular manner? And what you see when you look at the 24-minute now performance is virtually the same performance that you have seen for half a century. But why isn't it different that people aren't reading from the Bible, which is what makes it sound more like church to me? Judge, regardless of whether someone is reading from the Bible at the time. I mean, in a reverent tone of what you generally mean. Sure. The manner in which this performance takes place, it's telling the same story that a faculty member used to read from the Bible. Does the fact that they've removed the Bible reading mean something? Probably. Does it detract from the religious message being conveyed? I don't think so. As I say, seven of the nine performances after the Christmas narrative are exactly the same now as they were in 2014. Right. But the context is it's being presented as a dramatic performance in a concert setting. They're not in the sanctuary of a church. They're in a school auditorium. It's modeled after the Rockettes' Christmas Spectacular, in which the first act is all about the jingle bells aspect of Christmas, and the second act is the live nativity. I mean, that's the context in which this would be conventionally understood, taking it outside of the worship or prayer line of cases that are forbidden in schools. It's certainly a performance in the same way that the display invalidated in County of Allegheny was a display, was a piece of art, but that isn't the question that arises under the Establishment Clause. I think the question that arises is, first, what is the effect, and second, what is the purpose of this performance? Suppose the school orchestra and chorus at Easter time perform Bach's St. Matthew Passion. Is that an unqualified violation of the First Amendment, or must the school censor the text so that the gospels are not read out by the evangelist? I have to admit, Your Honor, that I'm not familiar with the piece. Oh, dear. That's a problem. I think that there are very few unqualified rules under the First Amendment. Well, let me just tell you that during the St. Matthew Passion, a character called the evangelist reads the text of the gospel according to St. Matthew, and then there are lots of other religious figures. It's one of the most venerated pieces in the history of music, and not being familiar with it is hard for me to understand. I apologize for my lack of musical knowledge. It certainly sounds like a piece that, at the very least, raises concerns under the Establishment Clause. And, again, we can go around and around and say, does this violate, does Jesus Christ Superstar violate the Establishment Clause? What if they just performed Holy Night? The question still boils down to, is this being performed in a secular manner, period? Of what importance is it to your argument that this is at the high school level as opposed to perhaps a public performance of St. Matthew's Passion by a local community orchestra in the community center of a town? I think certainly this Court and the Supreme Court have recognized unique concerns when the audience, or in this case the performers, are high school or younger students. So that's certainly something that factors into at least coercion analysis, and I think endorsement analysis, too. Thank you very much. All right, thank you very much. Thanks to both counsel. We will take the case under advisement.